**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 24 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CARLOS GALINDRE,

Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE;
RAYMOND GONZALES, Operations
Superintendent; and CITY
PERSONNEL BOARD,

Defendants-Appellees.

No. 98-2229
(D.C. No. CIV-96-1742-LH)
(D. N.M.)

## ORDER AND JUDGMENT[*]

Before **EBEL, McKAY**, and **BRISCOE**, Circuit Judges.

Plaintiff Carlos Galindre appeals the district court's grant of summary judgment to defendants on his civil rights claims. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff commenced employment with the City of Albuquerque in 1972. In March 1994, entering his fourth year as a supervisor in the public works department, he was named one of the defendants in a federal civil rights action brought by Fred Thompson, a black male who had worked directly under plaintiff since 1991. Plaintiff, represented by Assistant City Attorney Judy Kelly, testified at his deposition that he had heard the words "spook" and "mayate" used on a single occasion in the summer of 1991 by two unidentified individuals in a department lunchroom conversation. Plaintiff had no recollection who had uttered these words, both of which he described as terms used to denote black persons, but he did remember the terms were used only in a "general" way and not in reference to any particular person.

On February 27, 1995, Raymond Gonzales, operations superintendent, informed plaintiff by letter that he was being charged with "failure to carry out supervisory responsibilities" and faced disciplinary action, "up to and including possible termination." App. at 79. In particular, the notice stated:

> It has recently been brought to my attention that on at least one occasion in the past you overheard some members of your labor crew making racial slurs against another member of your crew, but you failed to take any action or to report this incident to your supervisor. Making ethnic slurs or comments towards fellow employees is a violation of the City's Employee Code of Conduct, and your failure as a supervisor to take any action in this matter is also a violation of the Code of Conduct.

Id. Plaintiff was advised he could respond to the allegations at a hearing to be held two days later. At the hearing, plaintiff stated:

> I don't rightly remember what ethnic slurs were made and who made them, and who they were directed to. I may or may not have heard some ethnic slurs made, but I do not know who made them or who they were directed to, and I don't remember even what the ethnic slurs were. That's all I have to say. If at any time I would have known exactly who made the statement, what the statements were, and who they were directly directed to, I would have reported as such to my immediate supervisor and done something about it, or asked for his advice as to what should have been done, what should I do about it and I would have carried it out.

Id. at 80-81. After assuring plaintiff the charges against him revolved exclusively around the incident he had mentioned in his deposition, Alex Garland, plant manager, stated, "we simply cannot allow that at this facility," and adjourned the hearing. Id. at 81.

Plaintiff was demoted to a non-supervisory position at another facility on March 24, 1995. The official letter notification to plaintiff stated:

> Information presented at the hearing, as well as your past work record [have] been reviewed and taken into account. Discrimination in any form will not be tolerated, and your failure as a supervisor to take action of any kind is [inexcusable] and totally unacceptable. Your past work record indicates to me that you have had other problems in exercising your supervisory duties and responsibilities. Although this latest incident is an extremely serious matter, and could result in termination, I have decided not to pursue that action at this time. I am, however, demoting you from your current position, per the terms of the attached Stipulation of Agreement.

Id. at 82. The proposed stipulation included a provision in which plaintiff agreed

to release the City and its agents from liability for any actions preceding the demotion. Plaintiff refused to sign the stipulation and he was discharged effective March 29, 1995. Plaintiff appealed his termination to the personnel board. Following a grievance hearing, at which plaintiff was represented by counsel, the hearing officer recommended upholding the discharge. However, the board voted to modify the recommendation and, after imposing a ninety-day suspension, ordered that plaintiff be reinstated to his department in a non-supervisory capacity. Plaintiff appealed the board's decision to the state district court, which affirmed the ruling in August 1997.

On February 28, 1996, while his appeal in state court was still pending, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging unlawful retaliation in violation of Title VII. On December 12, 1996, plaintiff, represented by counsel, filed a complaint in federal district court against the City and numerous city officials, alleging violations of state and federal law.[1] The two federal claims, brought under 42 U.S.C. § 1983, charged the City and its officials with denial of due process under the Fourteenth Amendment and unlawful retaliation in violation of the First Amendment. Plaintiff also asserted a separate wrongful retaliation claim for which he

---

[1] The complaint stated plaintiff was invoking the court's jurisdiction pursuant to "42 U.S.C. 1983, 1985, and 1988; as well as the laws and constitutions of New Mexico and the United States." App. at 2.

4

articulated no jurisdictional basis, but stated the claim was "the subject of [his] Title VII complaint with the EEOC." App. at 10. He noted the Title VII retaliation claim was "pending before the EEOC and [would] be joined with this action at the appropriate time." Id. The EEOC issued a right-to-sue letter on December 17, 1996.

On August 22, 1997, the district court granted defendants' motion to dismiss plaintiff's state law claims. On July 30, 1998, the court granted defendants' motion for summary judgment on plaintiff's due process and First Amendment retaliation claims. The court also denied plaintiff's cross-motion for summary judgment on his Title VII retaliation claim, stating plaintiff had not claimed retaliation in violation of Title VII in his complaint. Plaintiff appeals only the court's dismissal of his federal claims; he has abandoned his state law claims.

## II.

Federal Rule of Appellate Procedure 30(a)(1) places the burden on the appellant to prepare an appendix containing the trial court's docket sheet, all relevant pleadings, all relevant court orders/judgments, and any other parts of the record to which the appellant wishes to direct the court's attention. For us to consider an issue on appeal, an appellant must show where he raised the matter in district court. Lopez v. Behles (In re Am. Ready Mix, Inc.), 14 F.3d 1497, 1502

5

(10th Cir. 1994). If the evidentiary record is insufficient to assess the appellant's claims of error, we must affirm. Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979-80 (10th Cir. 1992).

Although plaintiff's appendix includes *defendants'* memorandums in support of their summary judgment motions, it does not include plaintiff's responses. Because the appendix also omits the district court docket sheet, we have no way of knowing if plaintiff filed responses to the motions. Plaintiff's counsel did include the cover motion of his cross-motion for summary judgment on plaintiff's First Amendment claim, but he did not include the memorandum in support of the motion. Inasmuch as neither the cover motion nor the district court's order offers any insight into the arguments plaintiff may have raised, we are unable to discern whether the issues on appeal were raised in district court. As to the purported Title VII claim, plaintiff's counsel included only the first five pages of the memorandum in support of his summary judgment motion on this cause of action, which consists exclusively of the facts underlying the claim. Plaintiff's counsel chose not to include the "argument" section, once again precluding us from knowing what issues plaintiff raised in district court. Further, while the order granting summary judgment suggests a hearing may have been held, see App. at 109 ("All parties were represented by counsel. The Court considered the pleadings, briefs, case law, and the arguments of counsel."), no

transcript of the hearing was included in the record on appeal.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge